## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**JOCELYNE R.,[1]**

      **Plaintiff,**

                                    **Case No. 2:22-cv-1523**

    **v.**                                  **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jocelyne R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On July 5, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since March 4, 2016. R. 107, 125, 256–59. The application was denied initially and upon reconsideration. R. 129–34, 137–39. Plaintiff sought a *de novo* hearing before an

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

administrative law judge ("ALJ"). R. 140–54. An ALJ held an initial hearing on July 14, 2020, R. 45–49, and on November 20, 2020, ALJ John Laughlin held another hearing, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 50–92. In a decision dated February 1, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from March 4, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 24–37. That decision became final on February 1, 2022, when the Appeals Council declined review. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 11, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 5.[3] On that same date, the case was reassigned to the undersigned. ECF No. 6. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at \*4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec*., 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not

disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements for disability insurance benefits through December 31, 2021. R. 26. She was 44 years old on March 4, 2016, her alleged disability onset date. R. 34. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, migraine headaches, vertigo, left meniscus tear and left knee degenerative disc disease ("DJD"), lumbar DJD, cervical DJD, and left carpal tunnel syndrome. R. 27.  The ALJ also found that the following impairments were not severe: varicose veins; right knee DJD; hypertension; hyperlipidemia; hypothyroidism; sleep apnea; nephrolithiasis; and decreased visual acuity. R. 27–28. The ALJ also found that post-concussion syndrome and post-traumatic stress disorder ("PTSD") were not medically determinable impairments. R. 28 (finding further that, in any event, these conditions would be non-severe).

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 28–30.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 30–34. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a nurse assistant. R. 34.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs─*e.g.*, jobs as a sorter, an office helper, and a surveillance system monitor─existed in the national economy and could be performed by Plaintiff. R. 35–36. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 4, 2016, her alleged disability onset, through the date of that decision. R. 37.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 29. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On December 14, 2020, Louis Sangosse, M.D., completed a six-page, check-the-box, and fill-in-the-blank form entitled "Residual Functional Capacity Questionnaire." R. 1275–80 ("Dr. Sangosse's 2020 opinion"). Dr. Sangosse indicated that Plaintiff had been a patient of the medical office since 2012, but that he had begun treatment of her April 2, 2014, and had most recently treated her on December 9, 2020. R. 1275. He diagnosed vertigo, right and left knee pain, and back and shoulder pain. *Id*. Asked to identify Plaintiff's symptoms, Dr. Sangosse checked the following: fatigue, balance problems, weakness, unstable walking, numbness/tingling, sensory disturbance (left hand), pain, difficulty remembering, depression, and blurred vision in the left eye. *Id*. According to Dr. Sangosse, Plaintiff had significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dextrous movement or gait and station: "impaired locomotion due to severe osteoarthritis & vertigo." R. 1276. Plaintiff did not have significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of central nervous system known to be pathologically involved by the multiple sclerosis process; Plaintiff did not complain of a

type of fatigue best described as lassitude rather than fatigue of motor function; and Plaintiff's emotional factors did not contribute to the severity of Plaintiff's symptoms and functional limitations. *Id*. Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the doctor's evaluation. *Id*. Dr. Sangosse opined that Plaintiff's experience of fatigue or other symptoms were severe enough to constantly interfere with attention and concentration and that she was severely limited in her ability to tolerate work stress. R. 1277. According to Dr. Sangosse, Plaintiff's impairments were expected to last at least twelve months; Plaintiff's symptoms and limitations had existed "since 2014 (both knees)[.]" *Id*. Dr. Sangosse opined that Plaintiff could walk one-half city block without rest; could sit continuously for 45 minutes at a time for a total of less than two hours in an 8-hour working day; could stand continuously for 30 minutes at a time and could stand/walk for less than 2 hours in an 8-hour working day. R. 1277–78. Plaintiff would need a job that permitted shifting positions at will, and would need to take unscheduled 30-minute breaks every "less than 1 h[r]." R. 1278. Plaintiff would need to elevate her legs with prolonged sitting. *Id*. She must use a cane or other assistive device while engaging in occasional standing/walking. *Id.* Plaintiff could frequently lift and carry 10 pounds and could occasionally lift and carry 20 pounds in a competitive work situation. *Id*. She had significant limitations in performing repetitive reaching, handling, and fingering; she could use her hands 20% of an 8-hour working day to grasp, turn, and twist objects and for fine manipulations, and could use her arms for all reaching. R. 1279. She could not bend and twist at the waist. *Id*. Dr. Sangosse further opined that Plaintiff should avoid even moderate exposure to extreme cold and heat, high humidity, fumes, odors, dusts, gases, and perfumes, and should avoid all exposure to cigarette smoke, soldering fluxes, solvents/cleaners, and chemicals. *Id*. Her impairments were likely to produce "good days" and "bad days." *Id*.

9

According to the doctor, Plaintiff was totally disabled. *Id*.

## V.    DISCUSSION

### A.    RFC and Opinion Evidence

The ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) except she can stand and/or walk for up to two hours in an eight-hour workday. *She can frequently handle and/or finger with the left upper extremity. She can occasionally balance*, stoop, kneel, crouch, and crawl. She can occasionally climb stairs and ramps and never climb ladders, ropes, or scaffolds. She can occasionally be exposed to vibrations and can never be exposed to unprotected heights or moving machine parts. She requires a moderate noise work environment as defined in the Dictionary of Occupational Titles/Selected Characteristics of Occupations.

R. 30 (emphasis added). Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly evaluate and account for Plaintiff's severe migraine headaches and assumed that Plaintiff could occasionally balance despite severe vertigo and related disorders. *Plaintiff's Brief*, ECF No. 18, pp. 12–19; *Plaintiff's Reply Brief*, ECF No. 29, pp. 1–6. Plaintiff also contends that substantial evidence does not support the ALJ's rejection of Dr. Sangosse's 2020 opinion. *Plaintiff's Brief*, ECF No. 18, pp. 20–28; *Plaintiff's Reply Brief*, ECF No. 29, pp. 7–9. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only

"credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the present case, the ALJ based the RFC for a limited range of light work on years of record evidence, including, *inter alia*, Plaintiff's testimony that she cannot stand or walk very long without suffering dizziness and falling, that she uses a cane to ambulate, and that she continues to experience falls due to dizziness; the fact that Plaintiff was in a car accident in 2009; imaging that showed disc bulging in Plaintiff's lumbar and cervical spine; Plaintiff's reverral to an orthopedist for reported bilateral knee pain in 2015 but had not sought orthopedic treatment despite continued knee pain in April 2016; the fact that Plaintiff was in a second car accident in January 2017; Plaintiff's chiropractic treatment for pain and her chiropractor's notation in June 2017 that Plaintiff's pain was improving; Plaintiff's report of daily headaches, intermittent dizziness, and neck pain at a neurological evaluation that included findings on physical examination of decreased sensation in her left hand and tenderness in her spine, but a normal gait without assistance and normal motor function; the fact that Plaintiff declined prescription medication and continued taking over-the-counter medication to treat her symptoms; electromyography testing ("EMG") that showed left carpal tunnel syndrome and left cervical radiculopathy; evidence that Plaintiff was given a splint for her wrist in May 2017, but again declined prescription medications; MRIs of Plaintiff's spine that showed continued degenerative

11

disc disease, and an unremarkable MRI of the brain; a negative x-ray of Plaintiff's left knee; evidence that Plaintiff underwent an injection to the left shoulder that resulted in improvement in her pain; Plaintiff's physical therapy and report in June 2017 that the pain in her knee, shoulder, and hand had improved; a June 2017 evaluation at the Balance Disorder Center during which Plaintiff reported issues with dizziness, headaches, and neck pain, but on physical examination there was no nystagmus in the eyes, Plaintiff could perform a full deep knee bend, and she had no problems walking on her heels or toes; an August 2018 MRI that revealed a torn meniscus and degenerative changes in the left knee, for which Plaintiff underwent an injection with reported improvement in her pain; evidence in October 2018 that Plaintiff required a knee brace and over-the-counter pain medication and was attending physical therapy which resulted in improvement in her pain and ambulation; Plaintiff's visit to the emergency room in December 2018 complaining of vertigo; imaging of the brain that showed no acute abnormalities and physical examinations that showed normal strength, sensation, and muscle tone, normal coordination and gait, and normal heel-to-toe and heel-to-shin movement; a neurological evaluation that showed intact coordination, full motor function, an ability to walk on heels and toes and to ambulate with an age-appropriate gait; emergency records that did not document any use of an assistive device to ambulate during evaluations; Plaintiff's April 2019 report that physical therapy for her knees had resulted in improvement in function; vestibular therapy for Plaintiff's vertigo and prescription medication for her migraines; a July 2019 orthopedic evaluation during which  Plaintiff reported that her treatments had brought improvement in her function and symptoms of pain and her denial of numbness and tingling in her extremities; physical evaluation that showed no effusion and good range of motion in both knees without instability; updated x-rays that continued to show "very mild" joint space narrowing in the right

knee and "mild" joint space narrowing in the left knee; Plaintiff's report of continued

improvement in her impairments with injections and physical therapy and findings on orthopedic

examination in August 2019 of no instability and full range of motion in her knees; evidence that

Plaintiff underwent another set of knee injections in October 2019 and again reported

improvement in pain; evidence that, throughout 2020, Plaintiff continued to undergo injections to

her knees and to take medication for vertigo and migraines, and that she remained obese; and

physical examination findings of tenderness in her knees but full range of motion and no

instability and the notation that she was consistently oriented without distress. R. 30–32. The

ALJ went on to summarize this evidence and to explain his RFC determination:

> The record shows the claimant has been treated for pain in her neck, back, and knees, vertigo, migraines, and pain in her left hand from CTS. However, the record documents general improvement with treatment. *Once she started taking medication for migraines, the documented complaints decreased in the record. She reported several times that injections and physical therapy improved her function in her knees. Her physical examinations showed full range of motion and no instability*. The claimant did not have much treatment for her neck and her back; she did not get injections to her spine, incorporate physical therapy for her spine, or require any more invasive treatment. She also declined taking any medication other than those available over-the-counter. *The claimant's reports of difficulty because of CTS are not found consistently throughout the record, and she did not require surgical repair in her hand or wrist*. She remained obese and *had problems with vertigo, but her neurological examinations consistently showed intact cognition and coordination. The claimant reported using a cane to ambulate most of the time, but there are only a few, recent reports of such use; in most of her physical examinations, she had normal ambulation without assistance. Although she reports having many falls per week, she has only been to the emergency room once, after having syncope at church.*
>
> This evidence supports the limitations found in the residual functional capacity. *The limitations to light work with decreased standing and/or walking, occasional postural activities, occasional climbing of ramps and stairs, and no climbing of ladders, ropes, and scaffolds all account for* the claimant's diagnosed degenerative disc disease throughout her spine, *the treatments required for her knees*, and limitations on movement caused by obesity. *The climbing limitations, and those related to vibration, noise, and hazards, further consider the pain in her joints and triggers that may cause exacerbations in vertigo or migraines. Limiting the claimant to frequent handling and fingers also considers the claimant's CTS in her*

> *left upper extremity, while accounting for the conservative treatment she received*
> *for this condition.* All of the limitations consider the pain, distraction, fatigue, and
> limitations on movement caused by the combination of all of her impairments.

R. 32–33 (emphasis added); *see also* R. 34 ("In sum, the above residual functional capacity

assessment is supported by the observations, opinions, and treatment recommendations of the

claimant's treatment providers, examiners, and evaluators, the diagnostic imaging and laboratory

test results, the testimony and representations of the claimant and her cousin, and the record as a

whole."). In the view of this Court, this record contains substantial evidence to support the ALJ's

RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186

F.3d at 429.

Plaintiff challenges the ALJ's RFC determination, arguing first that the ALJ erred by

failing to properly evaluate and account for Plaintiff's severe migraine headaches by failing to

incorporate time off-task and absences in the RFC. *Plaintiff's Brief*, ECF No. 18, pp. 12–17;

*Plaintiff's Reply Brief*, ECF No. 29, pp. 1–3. Plaintiff specifically contends that the ALJ

improperly emphasized Plaintiff's normal brain MRI, arguing that an unremarkable brain MRI is

not inconsistent with migraines and that such headaches cannot be detected through imaging

techniques, laboratory tests, or physical exams; according to Plaintiff, a negative MRI of the

brain does not undermine her allegations of migraines. *Plaintiff's Brief*, ECF No. 18, pp. 14–15

(citing, *inter alia*, SSR 19-4p); *Plaintiff's Reply Brief*, ECF No. 29, p. 3.

At step two of the sequential evaluation, the ALJ expressly found that Plaintiff's migraine

headaches, among her other impairments, were severe. R. 27. The ALJ continued to consider

Plaintiff's migraines at step three, concluding that the condition did meet or medically equal a

listed impairment. R. 29 (citing, *inter alia*, SSR 19-4p, 2019 WL 4169635 (2019)). The recitation

detailed above reflects that the ALJ went on at step four to consider Plaintiff's migraine

headaches when crafting the RFC. R. 30–32. As the Commissioner noted, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26, p. 14 n.2, the ALJ considered, among other things, that the May 2017 MRI of Plaintiff's brain was unremarkable. R. 31 ("The same month, although MRIs of her spine showed continued degenerative disc disease, an MRI of her brain was unremarkable and she had a negative x-ray of her left knee. She also received an injection to her left shoulder that she reported improved her pain (5F/4 [R. 711 (containing MRI imaging record addressed to Nazar Haidri, M.D., dated May 5, 2017, reflecting "[n]o acute intracranial pathology. Mild sinusitis. Focal right-sided mastoiditis")], 6; 7F/2; 9F/3; 13F/35).").

This Court agrees with Plaintiff that her negative brain MRI does not undermine her allegations relating to migraine headache. *Plaintiff's Brief*, ECF No. 18, p. 15. As Plaintiff highlighted, *Plaintiff's Brief*, ECF No. 18, p. 15, SSR 19-4p advises that MRI imaging "is not required for a primary headache disorder *diagnosis*[,]" but may be used "to rule out other possible causes of headaches—such as a tumor—meaning that an unremarkable MRI is consistent with a primary headache disorder *diagnosis*." SSR 19-4p, 2019 WL 4169635, at *4 (emphasis added). Here, there is no dispute that Plaintiff has been diagnosed with migraine headaches; the ALJ specifically found at step two that Plaintiff's headaches were a severe impairment. R. 27. However, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). It is significant that Plaintiff's unremarkable MRI was but a single piece of evidence that the ALJ considered when crafting the

RFC. R. 30–34. In addition to that evidence, when determining the functional limitations of the RFC the ALJ relied on, *inter alia*, evidence of a decrease in Plaintiff's complaints about migraines as well as evidence of consistently intact cognition and coordination. R. 30–34. In other words, the ALJ implicitly found that the evidence of record did not support additional or different RFC limitations, including time off-task or absences from work. *Id.*; *see also Rutherford*, 399 F.3d at 554 (providing that an ALJ need include only "credibly established" limitations); *cf.* R. 28 ("[Plaintiff] noted in her Function Reports that she had no difficulty understanding and following instructions, concentrating, paying attention, and using her memory."). Based on this record, the Court cannot conclude that the ALJ improperly "emphasized" the unremarkable brain MRI as a means of discounting Plaintiff's migraines when crafting the RFC.

In arguing further that the ALJ failed to properly evaluate and account for her severe migraine headaches, Plaintiff also contends that substantial evidence does not support the ALJ's finding of an "unquantified" "general improvement with treatment." *Plaintiff's Brief*, ECF No. 18, pp. 15–16 (citing, *inter alia*, R. 32); *Plaintiff's Reply Brief*, ECF No. 29, p. 2. Plaintiff contends that the fact that "there was some unevaluated decrease in the frequency of migraine complaints with treatment means only that the headaches continued to recur and interfere with [Plaintiff's] functioning, at a frequency the ALJ failed to determine and account for in the RFC finding" and that "[g]eneral statements of improvement do not indicate an ability to work," and that the reduction in the frequency of her headaches "does not mitigate either [the condition's] severity or debilitating effects." *Plaintiff's Brief*, ECF No. 18, pp. 15–16 (citations omitted); *see also Plaintiff's Reply Brief*, ECF No. 29, p. 2. Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff has not persuaded this Court that the ALJ committed reversible error

when he considered that Plaintiff's migraine headaches had improved because her documented complaints had decreased. R. 32; *cf. Chanbunmy v. Astrue*, No. CIV.A. 10-3263, 2011 WL 6303240, at *16 (E.D. Pa. Nov. 22, 2011) (noting, *inter alia*, that treatment records "do not reveal repeated complaints of headaches" and the "record suggests that this condition has improved" and concluding that the RFC is "supported by the longitudinal records, which document decreased frequency in headaches"), *report and recommendation adopted*, No. CIV.A. 10-3263, 2011 WL 6325971 (E.D. Pa. Dec. 16, 2011). In any event, the ALJ did not completely discount Plaintiff's complaints of migraine headaches. He specifically included in the RFC "climbing limitations, and those related to vibration, noise, and hazards. . . that may cause exacerbations in . . . migraines." R. 32. Plaintiff simply points to evidence regarding her migraines without explaining how such evidence supports her allegation that her condition warrants time off-task or absences from work or otherwise establishes reversible error in the ALJ's decision. *See id.*; *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Moreover, the ALJ, who is not required to discuss in the "opinion every tidbit of evidence included in the record[,]" *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004), expressly considered most of the evidence upon which Plaintiff relies, including evidence that Plaintiff sought chiropractic care; that she was in a second car accident in January 2017; that she had a brain MRI in May 2017; and that she was evaluated at the Balance Disorder Center in June 2017. *Plaintiff's Brief*, ECF No. 18, p. 16 (citations omitted); *see also* R. 31. To the extent that Plaintiff

intends to suggest that this evidence warrants time off-task or absences from work, her argument in this regard boils down to simply a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose either Plaintiff's or this Court's own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder"). Finally, to the extent that Plaintiff relies on diagnoses of migraines to support her argument, *Plaintiff's Brief*, ECF No. 18, p. 16, the Court has already explained that the ALJ found that Plaintiff's migraine headaches were a severe impairment, but that a mere diagnosis, without more, is insufficient to establish disability. *See Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780. At bottom, Plaintiff has not persuaded this Court that the ALJ erred in considering Plaintiff's migraine headaches when crafting the RFC.

In continuing to challenge the ALJ's RFC determination, Plaintiff complains that substantial evidence did not support the ALJ's "assumption" that Plaintiff could engage in occasional balancing despite her vertigo "and related disorders." *Plaintiff's Brief*, ECF No. 18, pp. 17–19; *Plaintiff's Reply Brief*, ECF No. 29, pp. 4–6. Plaintiff first complains that the ALJ "did not explain the omission of vertigo restrictions" other than "alluding to some improvement with treatment (Tr. 32)." *Plaintiff's Brief*, ECF No. 18, p. 17. However, as even Plaintiff concedes, the RFC limited Plaintiff to occasional balancing and postural activities. *Id*.; *see also* R. 30. Furthermore, the ALJ included in the RFC "climbing limitations, and those related to vibration, noise, and hazards. . . that may cause exacerbations in vertigo[.]" R. 32. Moreover, and

contrary to Plaintiff's argument that the ALJ simply "alluded to some improvement with treatment[,]" the ALJ expressly acknowledged that Plaintiff "had problems with vertigo, but her neurological examinations consistently showed intact cognition and coordination." *Id*. The ALJ relied on objective findings to conclude that this record did not warrant additional or different limitations. R. 30–34.

Plaintiff's insistence that "the record is replete with evidence documenting [her] severe vertigo[,]" *Plaintiff's Brief*, ECF No. 18, pp. 17–18 (citations omitted), does not militate a different result. There is no dispute that Plaintiff's vertigo was a severe impairment, and the ALJ found as much. R. 27. To the extent that Plaintiff intends to rely on the existence of vertigo to establish the severity of the condition or to argue that the RFC requires additional—otherwise unidentified—restrictions, that effort is unavailing. *Id*. As with her record citations relating to her migraine headaches, Plaintiff's record citations regarding vertigo consist primarily of evidence that the ALJ expressly considered: Plaintiff's second car accident in January 2017; a neurological evaluation in April 2017, during which she reported, *inter alia*, "intermittent dizziness";[4] Plaintiff's evaluation at the Balance Disorder Center in June 2017; Plaintiff's visit to the emergency room with a complaint of vertigo in December 2018; and evidence that she underwent vestibular therapy and was prescribed Topamax for migraines. *See Plaintiff's Brief*, ECF No. 18, pp. 17–19; R. 31–32. Plaintiff's suggestion that this evidence undermines the ALJ's consideration of her vertigo and RFC determination is, again, an improper request that this Court re-weigh the evidence. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611. Plaintiff's reliance on the diagnosis of vertigo (or positional vertigo), *see id*., is similarly unavailing for the

---

[4] Plaintiff reports this as "recurrent dizziness[,]" *Plaintiff's Brief*, ECF No. 18, p. 18 (citing R. 591–93), but the record, R. 591, and the ALJ, R. 31, properly indicated that she reported "intermittent dizziness[.]"

reasons already discussed. *See Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780. Finally, although Plaintiff relies on her subjective complaints, *Plaintiff's Reply Brief*, ECF No. 29, p. 5, the ALJ properly discounted those complaints, in part, for the reasons discussed later in this Opinion and Order. In short, Plaintiff has not shown that the ALJ erred in his consideration of her vertigo.

Plaintiff also challenges the ALJ's RFC determination by arguing that substantial evidence does not support the ALJ's stated reasons for rejecting Dr. Sangosse's 2020 opinion and, in particular, this physician's opined limitations regarding Plaintiff's left knee and upper extremities and regarding her need for a cane. *Plaintiff's Brief*, ECF No. 18, pp. 20–28; *Plaintiff's Reply Brief*, ECF No. 29, pp. 7–9. This Court disagrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the applicable regulation eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

---

[5] As previously noted, Plaintiff's claim was filed on July 5, 2018.

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In the case presently before this Court, the ALJ expressly considered Dr. Sangosse's 2020 opinion at step four of the sequential evaluation process, but found that opinion to be unpersuasive, reasoning as follows:

> Treating source Dr. Sangosse provided another vocational opinion in November 2020. He noted the claimant could sit, stand, and/or walk for less than two hours total in a workday. He noted the claimant would need breaks every 30 minutes, an assistive device to ambulate, and the ability elevate her legs. He believed the claimant could still occasionally lift 20 pounds and frequently lift 10 pounds, but had "significant" limitations with bilateral grasping, turning, twisting, and fine manipulation activity. He noted the claimant needed to avoid moderate exposure to cold, heat, humidity, and pulmonary irritants, and needed to avoid all exposure to smoke, soldering fluxes, solvents, and chemicals. He believed the claimant had severe limitation tolerating work stress and would have constant fatigue interfering with the claimant's attention and concentration. Dr. Sangosse concluded the claimant was totally disabled (44F).

Dr. Sangosse's opinion is unpersuasive. *His opinions regarding the need for an assistive device are inconsistent with the record noting several examinations with normal unassisted gait (2F/75; 29F/34, 64-65). The opinions regarding the claimant's use of her upper extremities are inconsistent with the lack of any complaint or treatment for a condition in the claimant's right upper extremity and the conservative treatment for her left CTS (6F/5).* Dr. Sangosse documents no rationale for the need to stay out of certain environments and away from certain chemicals, and the record does not document reports of difficulty in these environments or a problem with respiration. Dr. Sangosse noted the claimant would need to elevate her legs, but this recommendation is not found in her treatment record. Further, the claimant does not have a mental condition to support the "severe" limitation tolerating work stress, and although she may experience fatigue, the limitation related to attention and concentration is inconsistent with the claimant's ability to persist and concentrate through at least the one-hour hearing without any breaks or notable difficulty. Further, the opinion that the claimant is totally disabled is one left solely to the Commissioner. Although Dr. Sangosse's opinion that the claimant's limitation were the same as those in the residual functional capacity, his opinion is overall inconsistent with the record as a whole and I find it unpersuasive.

R. 33–34 (emphasis added). The Court finds no error with the ALJ's consideration in this regard. *See* 20 C.F.R. § 404.1520c(c)(3)(iii) (providing that, when considering a medical opinion, an ALJ may consider "[t]he kinds and extent of examinations and testing the medical source has performed or ordered"); *Brown v. Comm'r of Soc. Sec.*, No. 4:20-CV-2300, 2022 WL 4080773, at *7 (M.D. Pa. Sept. 6, 2022) ("Conservative treatment can be used as a factor in evaluating medical opinion evidence.") (citing 20 C.F.R. § 416.920c (c)(3)(iv)); *Koletar v. Kijakazi*, No. 1:21-CV-994, 2022 WL 3598090, at *13 (M.D. Pa. Aug. 23, 2022) (concluding that substantial evidence supported the ALJ's finding a medical opinion not persuasive because "the examination findings of the longitudinal record are not consistent with these rather extreme limitations," and the ALJ summarized medical evidence, including physical examinations that revealed, *inter alia*, stable gait, normal muscle tone, intact sensation, and normal reflexes except the plantar reflexes that were zero) (internal quotation marks omitted); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated

opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light of these standards" under 20 C.F.R. §§ 404.1520c, 416.920c where the ALJ concluded that a physician's opinion was not persuasive because "the limitations [the physician] espoused were not consistent with or supported by other evidence of record" such as, *inter alia*, the treatment records, for instance, [which] indicated a greater ability to walk, lift, and stand").

Plaintiff specifically disagrees with the ALJ's finding that Dr. Sangosse's opinion regarding the need for an assistive device is inconsistent with the record. *Plaintiff's Brief*, ECF No. 18, pp. 24–26; *Plaintiff's Reply Brief*, ECF No. 29, pp. 7–8. Plaintiff argues that this finding "unreasonably dismisses the ample evidence of knee problems and cane usage in the record." *Plaintiff's Brief*, ECF No. 18, p. 24; *see also id*. at 25–26 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 29, pp. 7–8 (citations omitted). Plaintiff's argument is not well taken.

"[An] ALJ need not account for use of a hand-held assistive device in an RFC assessment unless that device is medically required." *Mundo v. Kijakazi*, No. 1:21-CV-517, 2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023). "However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly 'address the evidence concerning Plaintiff's use of' the assistive device." *Figueroa v. Kijakazi*, No. 1:22-CV-194, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023) (quoting *Steward v. Comm'r of Soc. Sec*., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009)). "[T]he failure to do so may require a remand." *Id*. (citations omitted).

24

SSR 96-9p addresses this issue:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, *there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996) (emphasis added). "A claimant's testimony that a cane has been prescribed is not enough to meet this burden." *Mundo*, 2023 WL 2632810, at *5 (citations omitted). Similarly, a prescription for an assistive device with "no discussion of its medical necessity" is "insufficient to support a finding that [an assistive device] was medically necessary." *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. Nov. 25, 2002) ("Other than that [a prescription and a checked box that an assistive device was required for ambulation], there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary.").

In the present case, Plaintiff has not established that the use of a cane was medically necessary. Similar to the physician in *Howze*, Dr. Sangosse circled "Yes" when asked if Plaintiff must use a cane or other assistive device while engaging in occasional standing/walking but the doctor provided no explanation of the medical necessity for such a device. R. 1278. Moreover, the ALJ properly noted that physical examinations reflected, *inter alia*, that Plaintiff walked with a normal gait without an assistive device and had normal strength, sensation, coordination, and full motor function. R. 29–34. Notably, Plaintiff does not herself argue that a cane or assistive device is medically necessary. *See generally Plaintiff's Brief*, ECF No. 18; *Plaintiff's Reply*

*Brief*, ECF No. 29. Instead, in her opening brief, Plaintiff points to evidence in the record reflecting knee tenderness, a torn meniscus and degenerative changes of the knee, use of a knee brace, and the administration of injections, which she argues supports Dr. Sangosse's opinion that she needs a cane. *Plaintiff's Brief*, ECF No. 18, pp. 24–26. However, as previously explained, this evidence is insufficient to make the required threshold showing that an assistive device is medically necessary. *See* SSR 96-9P, 1996 WL 374185, at *7; *Howze*, 53 F. App'x at 222; *Mundo*, 2023 WL 2632810, at *5.

Plaintiff's reliance on additional evidence in her reply brief is similarly unavailing. As a preliminary matter, Plaintiff relies on evidence represented to be "Dr. Sangosse's treatment notes" or reports. *Plaintiff's Reply Brief*, ECF No. 29, pp. 7–8 (citing R. 893, 895–96, 898–99). But that evidence was authored—not by Louis Sangosse, M.D., the author of the 2020 opinion— but by Marie Sangosse, M.D. *See* R. 56–57. In any event, even these notes fail to establish the medical necessity for a cane. True, these treatment notes refer to Plaintiff's reported subjective statements. *Plaintiff's Reply Brief*, ECF No. 29, pp. 7–8 (citing R. 893, 895–96, 898–99).[6] However, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those

---

[6] These subjective statements include Plaintiff's assertion that she needed a "left TKR" or total knee replacement. However, Plaintiff does not point to any provider's actual determination or opinion that such a procedure was medically necessary.

26

statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Plaintiff's subjective statements, standing alone, will not establish medical necessity. *See Mundo*, 2023 WL 2632810, at *5. Plaintiff also points to Dr. Marie Sangosse's findings of swelling and tenderness in Plaintiff's left knee and her diagnosis of a bucket handle tear of the medial meniscus and a ruptured Bakers cyst; but these findings and diagnosis, by themselves, do not demonstrate disability nor do they establish the medical necessity of an assistive device. *See Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780; *Howze*, 53 F. App'x at 222. In short, this record—which documents ambulation without a cane and findings of normal gait and coordination and full strength and sensation—provides substantial support for the ALJ's discounting of Dr. Sangosse's opinion that Plaintiff needed an assistive device to ambulate.

In continuing to challenge the ALJ's consideration of Dr. Sangosse's opinion, Plaintiff also argues that the ALJ erred in concluding that the physician's opinion that Plaintiff had "significant" limitations with bilateral grasping, turning, twisting, and fine manipulation as "inconsistent with the lack of any complaint or treatment for a condition in the claimant's right upper extremity and the conservative treatment for her left CTS[.]" *Plaintiff's Brief*, ECF No. 18, pp. 26–28 (citing, *inter alia*, R. 34) (internal quotation marks omitted); *Plaintiff's Reply Brief*, ECF No. 29, pp. 8–9. Even if objective evidence did "not completely support[]" the right arm limitations, Plaintiff argues, the ALJ failed to properly evaluate evidence regarding Plaintiff's left upper extremity. *Plaintiff's Brief*, ECF No. 18, p. 26; *see also Plaintiff's Reply Brief*, ECF No. 29, p. 8 (arguing that the ALJ "fails to address the bulk of the relevant evidence"). This

Court disagrees. As with her earlier arguments regarding migraine headaches and vertigo, Plaintiff simply points to evidence regarding her left upper extremity without explaining how such evidence undermines the ALJ's discounting of Dr. Sangosse's opinion regarding her upper extremities or otherwise undermines the ALJ's decision. *See id.*; *see also Padgett*, 2018 WL 1399307, at *2. Moreover, as previously noted, the ALJ expressly considered most of the evidence upon which Plaintiff relies, including evidence that Plaintiff had been involved in a second car accident in January 2017; findings made during an April 2017 neurological examination; a May 2017 EMG that revealed left CTS and left cervical radiculopathy and the fact that she was given a splint for her wrist (and again declined prescription medication); May 2017 MRIs of her spine that showed degenerative disc disease and evidence that she received an injection to her left shoulder (which resulted in improvement of her pain); and her evaluation at the Balance Disorder Center in June 2017. *Plaintiff's Brief*, ECF No. 18, p. 16 (citations omitted); *see also* R. 31. To the extent that Plaintiff suggests that this evidence supports Dr. Sangosse's opined upper extremity limitations, her argument in this regard boils down to simply a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins*, 79 F. App'x at 514–15. This Court therefore again declines Plaintiff's invitation to re-weigh the evidence or to impose either Plaintiff's—or this Court's— own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611.

Plaintiff also contends that the ALJ erred in relying on Plaintiff's conservative treatment for her left carpal tunnel syndrome, arguing that such care "does not explain how the limitations identified by Dr. Sangosse were inconsistent with the record, which documents significant upper extremity difficulties and clinical findings." *Plaintiff's Brief*, ECF No. 18, p. 27. This Court disagrees. As the Court has already explained, the ALJ properly considered the record as it

relates to Plaintiff's upper extremities. In addition, Plaintiff has not persuaded the Court that the ALJ erred when considering Plaintiff's conservative treatment for her left CTS when evaluating Dr. Sangosse's opinion. *See Kiefer v. Saul*, No. CV 19-547, 2020 WL 1905031, at *3 (W.D. Pa. Apr. 17, 2020) (finding that the ALJ gave "valid and acceptable reasons for discounting the weight accorded" to treating opinion because those opinions were, *inter alia*, "inconsistent with the conservative approach to her treatment") (citing 20 C.F.R. §§ 404.1527, 416.927); *cf. Tedesco v. Comm'r Soc. Sec.*, 833 F. App'x 957, 961 (3d Cir. 2020) (finding that the "ALJ adequately evaluated the opinions from [the claimant's] treating physicians and put forth sound reasons supported by substantial evidence" where the ALJ assigned only partial weight to a treating physician whose conservative course of treatment (ibuprofen) did not support absences from work twice a month); *Schmidt v. Comm'r Soc. Sec.*, 465 F. App'x 193, 197 (3d Cir. 2012) (finding that "medical evidence in the record contradicts" a treating opinion where other treating "physicians repeatedly recommended conservative care"). Moreover, the ALJ expressly noted in his discussion that, *inter alia*, Plaintiff declined prescription medication and reported that pain in her shoulder and hand had improved. R. 31; *see also* R. 32 ("The claimant's reports of difficulty because of CTS are not found consistently throughout the record, and she did not require surgical repair in her hand or wrist."). As this Court has already explained, an ALJ need include only "credibly established" limitations in the RFC. *Rutherford*, 399 F.3d at 554; *Zirnsak*, 777 F.3d at 615. Significantly, the ALJ in this case did not completely discount limitations in Plaintiff's use of her left upper extremity. He specifically explained that "[l]imiting the claimant to frequent handling and fingers also considers the claimant's CTS in her left upper extremity, while accounting for the conservative treatment she received for this condition." R. 32. Accordingly,

based on this record, Plaintiff's challenge to the ALJ's consideration of Dr. Sangosse's opined limitations relating to her upper extremities will not serve as a basis to remand this action.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of Dr. Sangosse's 2020 opinion.

### B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of Plaintiff's subjective complaints. *Plaintiff's Brief*, ECF No. 18, pp. 29–31; *Plaintiff's Reply Brief*, ECF No. 29, pp. 9–10. For the reasons that follow, Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

In the present case, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 31–32. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 31. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support his findings. R. 30–34. The

ALJ also explained how Plaintiff's subjective complaints were inconsistent with other record

evidence:

> The record shows the claimant has been treated for pain in her neck, back, and knees, vertigo, migraines, and pain in her left hand from CTS. However, the record documents general improvement with treatment. Once she started taking medication for migraines, the documented complaints decreased in the record. She reported several times that injections and physical therapy improved her function in her knees. Her physical examinations showed full range of motion and no instability. The claimant did not have much treatment for her neck and her back; she did not get injections to her spine, incorporate physical therapy for her spine, or require any more invasive treatment. She also declined taking any medication other than those available over-the-counter. The claimant's reports of difficulty because of CTS are not found consistently throughout the record, and she did not require surgical repair in her hand or wrist. She remained obese and had problems with vertigo, but her neurological examinations consistently showed intact cognition and coordination. The claimant reported using a cane to ambulate most of the time, but there are only a few, recent reports of such use; in most of her physical examinations, she had normal ambulation without assistance. Although she reports having many falls per week, she has only been to the emergency room once, after having syncope at church.

R. 32. In the view of this Court, this record provides substantial support for the ALJ's decision to

discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*,

717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff challenges this consideration, contending that the "errors" previously identified

by her also undermine the ALJ's analysis in this regard. *Plaintiff's Brief*, ECF No. 18, p. 29.

Plaintiff's challenge in this regard is unavailing for the reasons already explained.

Plaintiff also questions the ALJ's consideration of Plaintiff's conservative treatment.

*Plaintiff's Brief*, ECF No. 18, pp. 30–31 (citing out of circuit cases); *Plaintiff's Reply Brief*, ECF

No. 29, p. 10. However, the ALJ did not err when considering Plaintiff's conservative treatment

in evaluating Plaintiff's subjective statements. *See* 20 C.F.R. § 404.1529(c)(3)(v); *Schmidt*, 465

F. App'x at 198 (finding that the "ALJ explained his reasons for discrediting [the claimant's]

subjective testimony and pointed to several objective medical findings that contradicted [the

claimant's] subjective complaints" where the claimant underwent back surgery in 2007, and, thereafter, "there was objective medical evidence that did not support [the claimant's] subjective complaints of disabling pain[,]" including, *inter alia*, that Plaintiff's two physicians "continued to prescribe conservative care throughout this period"); *Phillips*, 91 F. App'x at 782 (considering the claimant's conservative treatment history following surgery as a factor that supported the ALJ's determination to discount the claimant's subjective complaints).

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports").

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  November 12, 2024                              *s/Norah McCann King*
_____
                                                    NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE